Woods
*v.*
Varnum.
</div>

---

## LYMAN BIGELOW *et al. versus* MOSES PRITCHARD.

The provision in *St.* 1838, *c.* 163, (entitled, an act for the relief of insolvent debtors and for the more equal distribution of their effects,) that the assignment shall vest the debtor's property in the assignees, although the same may then be attached on mesne process, and shall dissolve any such attachment, applies to an attachment made after the statute went into operation, for the purpose of securing a debt incurred before its enactment, the debtor and creditor being citizens of this State and the cause of action having accrued on a contract made and to be performed in this State ; and the statute, in such application of it, is not contrary to the constitution of the United States, for it does not impair the obligation of the contract, but only affects the remedy.

TROVER. The following facts were agreed on by the parties.

On the 7th of August, 1838, Edmund Fletcher was the owner of the several articles of personal property sued for in this action, and on that day Silas Taylor and Daniel Ryan severally commenced suits against him for the recovery of *bonâ fide* debts due to them respectively, and the writs were delivered to the defendant, a deputy sheriff, with orders to attach the property. He accordingly attached the articles on the same day, and took them into his possession and held them by virtue of the attachments.

Bigelow
v.
Pritchard

On the 9th of the same August, Fletcher applied to a master in chancery for relief under *St.* 1838, *c.* 163, entitled " an act for the relief of insolvent debtors and for the more equal distribution of their effects," passed on the 23d of April, 1838. The requisitions of the statute were complied with, and the plaintiffs were duly chosen and appointed assignees of Fletcher ; and afterwards, on the 27th of August, they demanded of the defendant the property in question, but he refused to deliver it, claiming to hold it by virtue of the attachments.

The debts for which the property was attached accrued before the 23d of April, 1838 ; and Taylor and Ryan, the plaintiffs in the actions, did not attend any meetings of the creditors of Fletcher.

If upon these facts the Court should be of opinion that this action could be maintained, the defendant was to be defaulted ; otherwise the plaintiffs were to become nonsuit.

Jan. 31st,
1839,
at Boston.

*Farley,* for the plaintiffs, cited Revised Stat. *c.* 90, § 24 ; *Bond* v. *Ward,* 7 Mass. R. 128 ; *Ogden* v. *Saunders,* 12 Wheat. 213 ; *Blanchard* v. *Russell,* 13 Mass. R. 1.

*Sprague* and *J. Russell,* for the defendant, argued that it was not the intention of the legislature, in the statute of 1838, nor was it within their constitutional authority, to defeat an attachment under these circumstances. The power of the legislature over remedies is not unlimited. To take away the remedy *altogether,* is to *impair the obligation* of the contract. The statute (§ 7) takes away the remedy by arrest, and if it takes away the remedy by attachment also, it goes far to defeat the contract. It cannot be known that a party would have lent his money, before April, 1838, unless he had had those means of securing payment ; at least he would have taken a mortgage, if he had supposed the legislature would deprive him of those remedies. The statute is broad enough in terms, to embrace the case of an attachment made before the 1st of August, the day when the statute went into operation, but that would clearly be a vested right, which it cannot be supposed the legislature would intentionally violate ; and an attachment made after that day, on a contract entered into before the statute was passed, falls within the same principle. The statute must be construed to be prospective, so as to affect only contracts made after its

enactment ; for the remedy is in reality an essential ingredient in the contract. This case is within the 25th section of the statute, saving all rights which have accrued to any person by virtue of the laws previously in force. *Green* v. *Biddle*, 8 Wheaton, 1.

PUTNAM J. delivered the opinion of the Court. This is an action of trover. The plaintiffs claim as assignees of the estate of an insolvent debtor, under *St.* 1838, *c.* 163, entitled " an act for the relief of insolvent debtors, and for the more equal distribution of their effects," which passed on the 23d of April, 1838. And the defendant claims to hold the goods in virtue of attachments made *after* the act went into effect, to secure debts due to the attaching creditors *before* the act passed.

It is understood that the debtor and creditors were and are citizens of this Commonwealth, and that the causes of action accrued on contracts made and to be performed in this State.

At the time when the contracts were made, and when the causes of action accrued, the creditors had by law a right to secure their claims by attachments. The statute was passed on the 23d of April, but did not go into effect until the 1st of August ; and the creditors did not commence their suits and make their attachments, until after the statute went into effect, but they were made before the debtor applied for relief under the same act.

By the 5th section of the act it is provided, among other things, that the assignment shall vest all the property of the debtor in the assignees, " although the same may then be attached on mesne process as the property of the said debtor ; and such assignment shall be effectual to pass all the said estate, and dissolve any such attachment."

The defendant admits that the words of the section last c ted are broad enough to cover the plaintiffs' claim, but he contends that by the 25th section, his right of attachment is preserved. It provides, that " all the provisions of law inconsistent with the provisions of this act are hereby repealed, *saving all rights which have accrued to any person by virtue of the same,* which shall be judged and decided upon in the same manner as if this act had not been passed."

And the defendant contends that the right which existed

<div style="text-align: right">Bigelow<br>*v.*<br>Pritchard.</div>

<div style="text-align: right">*Feb.* 2d.</div>

when the contracts were made, to sec ire the performance of them by an attachment of the debtor's property, was a vested interest which could not be lawfully devested by the subsequent insolvent act ; that the law then existing was looked to as making a part of the contract ; and that the act is retrospective and in violation of *Art.* 1, *Sect.* 10, of the constitution of the United States, which provides that " no State shall pass an *ex post facto* law, or law impairing the obligation of contracts."

On the other hand, it is contended for the plaintiffs, that the act of insolvency has not impaired the contract, but has only affected the remedy to enforce it.

And it is true that the contract, upon which the attachment was made, has not been discharged by the act. As was before said, the claim of the creditor had accrued before the act passed. But it was optional with him to prove it or not, under the insolvent act. If he proved it, then he would be considered as having assented to the act ; but if he did not prove his debt, his contract remained in full force, and he might have a remedy against any surplus that should remain after the payment of the debts, and also against property which the insolvent debtor might acquire after his discharge under the insolvent act.

By the 3d section it is provided, that " all debts due and payable from such debtor at the time of the first publication of the notice of issuing the said warrant [against the debtor's estate], *may* be proved and allowed against his estate assigned as aforesaid ; and all debts *then absolutely due, although not payable until afterwards, may be proved* and allowed as if payable presently, with a discount or rebate of interest, when no interest is payable by the contract, until the time when the debt would become payable."

And by the 7th section the debtor who complies with all the requisitions of the act, " shall be absolutely and wholly discharged from all his debts, which shall be at any time *actually proved* against his estate assigned as aforesaid ; and from all debts which are *proveable* under this act and which are founded on any contract made by him, *after* this act shall go into operation, if made within this Commonwealth, or to be performed within the same ; and from all debts which are proveable as

aforesaid, and which are founded on any contract made by him, after this act shall go into operation, and due to any persons who shall be resident within this Commonwealth at the time of the first publication of the notice of the issuing of the warrant mentioned in the first section of this act ; and from all demands for or on account of any goods or chattels wrongfully obtained, taken or withheld by the debtor, as mentioned in the third section of this act ; [which, by that section, are proveable ;] and the said debtor shall be also forever discharged and exempted from arrest or imprisonment, in any suit, or upon any proceeding, for, or on account of any debt or demand whatever, which might have been proved against his estate as aforesaid."

Thus the remedy of imprisoning the debtor is taken away from the creditor in all civil cases, as well where the cause of action arose before, as where it arose after the insolvent act. And the creditor might prove, if he would, his claim which arose on a contract made *before*, notwithstanding it was not to be paid until *after*, the act. If he actually proved such claims, then the debtor was discharged. And he was discharged from all contracts made after the act passed, unless upon contracts which were not made in this State, or to be performed within the same, or unless the debts were due to persons who were not resident in this State at the time of the publishing of the notice of the issuing of the first warrant.

This act is most essentially different from the insolvent act of New York, relied upon by the debtor, in the case of *Sturgis* v. *Crowninshield*, 4 Wheat. 122, which absolutely discharged the debtor from all his preëxisting debts, and which the Supreme Court of the United States held to be so far inoperative and unconstitutional, as impairing the obligation of contracts.

The remedy of imprisoning the debtor was taken away by the insolvent acts in both States ; and that State legislation was held, in the case last cited, not to impair the obligation of the contract. *S. C.* 4 Wheat. 200. The State (said Chief Justice Marshall) may withhold from the creditor the means of obtaining the debt, arising from imprisonment, and yet leave the contract in full force. And yet it is very obvious, that in

some cases imprisonment is the most, if not the only, effectual remedy. As where a dishonest debtor has concealed funds, and put the means of payment beyond the reach of his creditors, it may be that imprisonment would compel him to do that justice which his inclination would have denied.

The legislature of this State, actuated by a sense of humanity and justice, have appropriated the property of the debtors to be equally distributed among their creditors, with some inconsiderable preferences not affecting the argument, and they have, in such cases, abolished the old remedy of attachment for the separate use of the creditor, which was found to be very productive of fraud and injustice.

But the application of the law is confined to contracts made after it went into operation, unless the creditors whose claims accrued under the old law, should come in and prove their claims under the new. Now this arrangement, it appears to us, comes clearly within the rule, that the legislature may alter the remedy from time to time as it may deem it to be expedient to do so, and the obligation of the contract itself is not, we think, thereby impaired.

It would not be contended, (as we suppose,) that the legislature may not lawfully exempt a part of the property of a debtor from attachment on mesne process or levy on execution ; for example, articles of furniture, beds and bedding, &c. necessary for the debtor and his family. To that extent the remedy to enforce payment is diminished rightfully. By the insolvent act, the whole property which the creditor has at the time of the assignment is to be appropriated to the payment of the proving creditors. But the surplus, if any, remaining in the hands of the assignees, is, according to the 13th section, to be paid back to the debtors. If a creditor whose claim existed before the insolvent act, does not choose to come in and take the benefit of its provisions, he may attach and levy upon the surplus property, if there should be any to be found, and he may also take the property which the debtor might there after acquire.

Such a creditor cannot be said to be deprived of all remedy , which, if true, would be tantamount to the discharge of his claim ; but his contract remains in full force, and the limited ·

remedy which is left to enforce the payment, would be more or less valuable, according to circumstances.

The obligation of payment is to be enforced according to the law, as the law may direct from time to time, and the creditor makes and holds his contracts, subject to such alteration touching the remedy, as the legislature may prescribe.

Take for example the statutes of limitation. Suppose that when the contracts were made, there were no such statutes existing ; yet they are held to operate upon such contracts, and the creditor, if he does not conform to the subsequent law affecting his remedy, may be met with an effectual bar to his recovery, notwithstanding it was created after his contract was made.

. A creditor has no vested right in the mere remedy, unless he may have exercised that right by the commencement of legal process under it, before the law making an alteration concerning it, shall have gone into operation. No question of that sort arises in this case ; as the creditor made no attachment, until after the act for relief of insolvent debtors went into operation.

More than three months' notice was given after the act passed and before it went into operation ; affording an opportunity to those who had claims which might have been secured by attachment, to avail themselves of that remedy, and the rights acquired under such attachments would have been protected by the 25th section before cited. *Smith* v. *Bradstreet*, 16 Pick. 264.

It is the opinion of the Court, that according to the **facts agreed by the parties**, the defendant is to be defaulted.